COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-169-CV
 
ALFREDO MEKDESSI A/K/A FOUAD MEKDESSI,       
           
           
    APPELLANTS
INDIVIDUALLY AND D/B/A FM EXPRESS FOOD
MART, INC., AND FM EXPRESS FOOD MART, INC.
V.
RISC, INC. A D/B/A OF       
           
           
           
           
           
    APPELLEE
RIGG INSURANCE MANAGERS, INC.
------------
FROM THE 17
TH DISTRICT COURT OF TARRANT
COUNTY
------------
MEMORANDUM OPINION(1)
------------
I. Introduction
Appellants Alfredo Mekdessi a/k/a Fouad Mekdessi, Individually and
d/b/a FM Express Food Mart, Inc. and FM Express Food Mart, Inc. (collectively,
"Mekdessi") appeal from the judgment on a suit on sworn account. In
the suit, appellee RISC, Inc., a d/b/a of Rigg Insurance Managers, Inc. alleged
that Mekdessi failed to pay audit insurance premiums on policies it brokered on
Mekdessi's behalf. In six issues, Mekdessi contends: (1) there is no evidence to
support the judgment of liability for the premiums; (2) the trial court erred in
admitting hearsay evidence at trial; (3) there is no statutory basis for the
award of attorney's fees to RISC; (4) the trial court erred in failing to
transfer venue from Tarrant County to Dallas or Harris County; (5) insufficient
evidence exists to support the trial court's award of attorney's fees in excess
of $26,802.41 to RISC; and (6) the trial court erred in failing to segregate
attorney's fees between the defendant parties. We affirm.
II. Factual Background
From 1983 to 1997, Mekdessi, the owner of several convenience stores,
used and "relied" on Pat McCarty of Texas General Insurers as his
agent to obtain insurance for his stores.(2) In
1994, McCarty entered into an Agency Agreement with RISC that lasted until 1997.
Under the Agreement, McCarty requested RISC to obtain the appropriate insurance
policies for Mekdessi.(3) RISC, relying on this
request, contacted insurance companies to obtain the appropriate policies. From
1994 to 1997, RISC brokered three property and three liability insurance
policies in fulfillment of the agreement with McCarty. Two of the property
insurance policies insured Alfredo Mekdessi, and the remaining policies showed
"Alfredo Mekdessi d/b/a FM Express Food Mart, Inc." as the insured.
The liability policies brokered by RISC had an audit premium, even
though Mekdessi never requested this type of policy. Under this type of policy,
Mekdessi paid a premium based on the volume of sales by his convenience stores
rather than a flat premium. Thus, the higher the sales, the higher the premium.(4)
Under the policies RISC obtained, the underwriter, Interstate Fire and
Casualty Company, allowed RISC to collect the premiums on the policies and
looked to RISC for payment of the premiums if Mekdessi or McCarty did not pay.
RISC also invoiced the premiums and audited the sales of Mekdessi's stores to
determine if a refund was needed or an additional premium owed on the liability
policies. Abe Kerdahi, Mekdessi's company secretary and accountant, worked with
RISC to ensure the audit premiums were properly calculated.
After audits were conducted for policy years 1994-1995 and 1995-1996,
RISC determined that Mekdessi owed $60,970 for audit premiums on various
liability policies and an unpaid portion of a property policy's premium. Kerdahi
agreed that this amount was owed and assured RISC that it would be paid.
Mekdessi did not, however, pay the premiums. Consequently, RISC had to pay the
premiums to the underwriter under the policy terms.
On June 2, 1998, RISC filed a suit on sworn account to recover the
policy and audit premiums. Mekdessi denied that he was obligated to pay the
premiums. The trial court rendered judgment in favor of RISC, and this appeal
followed.
III. Venue
In Mekdessi's fourth issue, he argues that the trial court erred in
failing to transfer venue from Tarrant County because venue was only proper in
Dallas or Harris County. In Mekdessi's motion to transfer venue, he argued that
proper venue lies in Harris County. He never mentioned Dallas County, and there
is no record of the hearing in the appellate record. Thus, we will not consider
whether venue should have been transferred to Dallas County. See
Tex. R. App. P. 33.1(a).
The plaintiff has the first choice to fix venue in a proper county. The
plaintiff does this by filing the suit in the county of his choice. Eddins
v. Parker, 63 S.W.3d 15, 18 (Tex. App.--El Paso 2001, pet. denied). If a
defendant, through a motion to transfer venue, objects to the plaintiff's venue
choice, the plaintiff must prove that venue is proper in the county of suit. See
Tex. R. Civ. P. 87(2)(a); Eddins, 63 S.W.3d at 18. If the
plaintiff fails to establish proper venue, the trial court must transfer venue
to the county specified in the defendant's motion to transfer, provided that the
defendant has requested transfer to another county of proper venue. See
Tex. Civ. Prac. & Rem. Code Ann. § 15.063 (Vernon 2002); Eddins,
63 S.W.3d at 18. In determining whether venue was proper in Tarrant County, we
review the entire record for probative evidence indicating venue was proper in
the county of judgment. See Ruiz v. Conoco, Inc., 868
S.W.2d 752, 758 (Tex. 1993).
In response to Mekdessi's motion, RISC introduced evidence showing that
"all or a substantial part of the events or omissions giving rise to the
claim occurred" in Tarrant County. Tex. Civ. Prac. & Rem. Code Ann. §
15.002(a)(1). For example, the evidence showed that the Agreement required
McCarty to make payments to RISC in Tarrant County and that Mekdessi agreed to
pay additional premiums to RISC in its Tarrant County office. See
id. § 15.035(a) (stating suit may be brought in county where defendant
agreed to perform contractual obligation); Roach v. Schaefer,
214 S.W.2d 128, 130 (Tex. Civ. App.--Fort Worth 1948, no writ) (holding venue
proper in county where defendant agreed to pay insurance premiums). Thus, venue
was proper in Tarrant County, and the trial court did not err in denying
Mekdessi's motion to transfer.(5) We overrule
issue four.
IV. Hearsay Evidence
In Mekdessi's second issue, he argues that the trial court erred in
admitting several exhibits and witness testimony into evidence over his hearsay
objection. In his brief, he also asserts that the trial court erred in admitting
the disputed evidence because RISC did not lay the proper predicate for the
evidence before introducing it. We first note that Mekdessi only objected to
"proper predicate" when RISC introduced exhibits 2, 3, and 4. See
Tex. R. App. P. 33.1(a). Moreover, an objection on the grounds of improper
predicate preserves nothing for review. See Seymour v.
Gillespie, 608 S.W.2d 897, 898 (Tex. 1980); Waldon v. City
of Longview, 855 S.W.2d 875, 878 (Tex. App.--Tyler 1993, no writ.). Thus,
we overrule that complaint with regard to the admission of the evidence
challenged by Mekdessi on appeal.
At trial, Mekdessi objected on hearsay grounds to the admission of
exhibits 2, 3, 4, 5, 6, 7, 8, 10, 13, 14, 16, 18, 19, 20, 21, 22, 23, 24, 25,
26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 40. Aside from
Mekdessi's discussion of exhibits 16 and 18, he only cites rule 802 as legal
support for his argument that the exhibits were hearsay and should not have been
admitted. Tex. R. Evid. 802 (defining hearsay). He also argues that many of the
exhibits are unauthenticated, an objection that he raises below to some of the
exhibits in dispute, but not all. See Tex. R. App. P.
33.1(a). Mekdessi does not, however, cite any legal support for his argument
that improper authentication should exclude the exhibits. See
Tex. R. App. P. 38.1(h). We conclude that Mekdessi's lack of authority and legal
support for his contentions amounts to inadequate briefing. Thus, Mekdessi has
waived his argument on appeal with regard to exhibits 2, 3, 4, 5, 6, 7, 8, 10,
13, 14, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36,
37, 38, and 40. See Fredonia State Bank v. Gen. Am. Life Ins.
Co., 881 S.W.2d 279, 284 (Tex. 1994).
With regard to exhibits 16 and 18, Mekdessi does cite to case authority
in addition to rule 802, but he presents no argument in support of his
contention. See Tex. R. App. P. 38.1(h). Thus, he has also
waived his complaint with regard to exhibits 16 and 18. See
Fredonia State Bank, 881 S.W.2d at 284.
Mekdessi also objected to, and challenges on appeal, the admission of
James Couch's testimony. Specifically, Mekdessi challenged as hearsay Couch's
testimony regarding statements made to him by Kerdahi. RISC responded that
Kerdahi "is an agent of - - and a secretary of the corporation [i.e.,
Mekdessi]. Admission against interest." Based on this response, the trial
court could rightfully infer that RISC's attorney meant that Kerdahi's
statements were not hearsay because they amounted to an admission by a
party-opponent. See Tex. R. Evid. 801(2)(D). Because
Kerdahi was Mekdessi's secretary and accountant, we hold the trial court did not
abuse its discretion in denying Mekdessi's objection to the admissibility of
Couch's testimony. We overrule issue two.
V. Mekdessi's Liability Under the
Agreement
In Mekdessi's first issue, he contends that no basis in law exists for
holding him liable for McCarty's obligations to RISC under the Agreement.
Mekdessi does not, however, challenge the trial court's findings of fact. When
findings of fact are filed and are unchallenged, they occupy the same position
and are entitled to the same weight as a jury verdict. McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). They are binding on an
appellate court unless the contrary is established as a matter of law or there
is no evidence to support the finding. Id. To determine a
"no evidence" point, this Court must disregard all evidence contrary
to the trial court's finding, and if there is any remaining evidence that would
support the verdict or judgment, the trial court's judgment must be upheld. Id.
at 696-97. If, after the removal of all contrary evidence, this court finds
an absence of any evidence that would support the verdict or judgment, a
conclusion contrary to the verdict or judgment is required as a matter of law. Id.
at 697; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660,
661-62 (1951).
Among other things, the trial court found that McCarty, Mekdessi's
agent, requested insurance from RISC and that RISC brokered insurance on
Mekdessi's behalf. The court determined that Mekdessi benefitted from the
policies brokered by RISC and that RISC accounted to Mekdessi and provided him
with an accounting of the premiums owed. The court found that Mekdessi refused
to make the premium payments for 1996-1997 and the audit premiums for 1994-1995
and 1995-1996, breaching the insurance contract. We hold the evidence in the
record supports the trial court's findings.
With regard to Mekdessi's challenge to the legality of him being held
liable to RISC, the law in Texas is clear that "pursuant to the universal
and customary manner of doing business between an insurance agent and an
insured," an agent of an insurance company is subrogated to the rights of
the insurer when the agent pays the obligations of the insured to the insurer,
regardless of whether the subrogation rights are specifically spelled out in the
agreement. Heritage Manor of Blaycock Props., Inc. v. Petersson,
677 S.W.2d 689, 691 (Tex. App.--Dallas 1984, writ ref'd n.r.e.); see
also Ward v. Hanchett, 47 S.W.2d 360, 361-62 (Tex. Civ. App.--San Antonio
1932), writ dism'd, 65 S.W.2d 268 (Tex. Comm'n App. 1933,
judgment adopted); Waters v. Wandless, 35 S.W. 184, 185-86
(Tex. Civ. App.--Dallas 1896, no writ). Moreover, a party may be deemed to
ratify an agreement by accepting its benefits. Heritage Manor,
677 S.W.2d at 691.
Under the facts of this case it is clear that Mekdessi benefitted from
the Agreement between McCarty and RISC and from RISC's efforts in obtaining
insurance for him from Interstate and paying the premiums that he owed. As a
result, RISC became subrogated to the rights of Interstate, and Mekdessi became
liable to RISC. We overrule Mekdessi's first issue.
VI. Attorney's Fees
In his third issue, Mekdessi contends that RISC is not entitled to
attorney's fees. As Mekdessi acknowledges, however, RISC filed suit on a sworn
account. Under section 38.001(7) of the civil practices and remedies code,
attorney's fees are recoverable for a suit on a sworn account. Tex. Civ. Prac.
& Rem. Code Ann. § 38.001(7) (Vernon 1997). We overrule Mekdessi's third
issue.
In Mekdessi's fifth issue, he contends the trial court erred in
awarding attorney's fees in excess of $26,802.41. Mekdessi failed, however, to
support his argument with legal authority. See Tex. R.
App. P. 38.1(h). Thus, we overrule issue five as inadequately briefed. See
Fredonia State Bank, 881 S.W.2d at 284.
In issue six, Mekdessi contends that the trial court erred in failing
to segregate attorney's fees. Although Mekdessi raised the issue in a motion for
new trial, Mekdessi stipulated to the award of attorney's fees at trial without
requesting that the attorney's fees be segregated, and he did not object to the
trial court's failure to segregate attorney's fees. Thus, we hold he has waived
this complaint on appeal. See Clary v.
Schmolke, 977 S.W.2d 883, 889 (Tex. App.--Beaumont 1998, pet. denied). We
overrule issue six.
VII. Conclusion
Having overruled Mekdessi's issues on appeal, we affirm the trial
court's judgment.
 
                                                                        PER
CURIAM
 
PANEL F: DAY, J.; CAYCE, C.J.; and WALKER, J.
DELIVERED: March 27, 2003

1. See Tex. R. App. P. 47.4.
2. Mekdessi did not always see the policies McCarty
obtained for him.
3. The Agreement specifically refers to McCarty as
Mekdessi's agent and not as an agent of RISC.
4. Under a policy with an audit premium, the insured
initially pays a deposit premium based on an estimate of sales. When the policy
year ends, an audit is conducted to determine the actual volume of sales. If the
actual sales are more than the estimate, then the insured owes an additional
premium. If the sales are less than the estimate, the insured receives a refund.
5. Mekdessi did not seek to transfer venue to Harris
County on grounds provided in section 15.002(b) of the civil practice and
remedies code. Id. § 15.002(b) (setting forth circumstances under
which venue maybe transferred from one county of proper venue to another county
of proper venue "for the convenience of the parties and in the interest of
justice").